Good morning, Your Honors. Alexandria Yates on behalf of Defendant Appellant Ata Dighlawi, and we're asking this Court to remand for a new restitution hearing. Your Honors, this case cries out for a remand. The District Court ordered Mr. Dighlawi to pay more than $400,000 in restitution without apparently recognizing that it had the discretion to apportion a lesser amount to him. Now both parties now agree that apportioning was within the District Court's discretion. But at the time of sentencing, it doesn't appear that the District Court understood as much. Let me ask you, does the Ninth Circuit require that there be a specific statement of the discretion or not? I believe so, Your Honor, and I would point to the Mills case, which is cited in the briefing, and specifically at Penn Site 611, where this Court requires not only that the record reflect that the judge had information bearing on the 3664 factors, and we also argue that the judge did not have all of that information here, but also, and here I'm quoting, that there must be some indication that the judge gave thought to the relevant information. So no, the judge does not have to tick off each factor or go into an extensive discussion of the facts, but there needs to be some indication in the record that the judge understood and exercised his discretion, and that's what's missing in this case. Well, the Seventh Circuit case cited by your opponents talks about whether it's clear he was mistaken in his ability to apportion restitution. Do we have any Ninth Circuit cases one way or the other on that? If the Court's referring to the Walton case, I mean, I think this case is just like the Walton case in that Mills is potentially the closest precedent. There's also the Carty line of cases, which this Court's, of course, very familiar with, where remand is in order if a party raises a non-frivolous argument and it's not addressed by the judge, and we think that that analogy holds here. I mean, the basic point is there must be something in the record, and I think this is clear from the Mills precedent in this Court, to indicate that the judge understood the discretion was exercised in that, and that's missing here. And, Your Honor, I do think that the Walton case is particularly apt precedent because there what happened was the appellate court could not tell from the record whether the district court understood its discretion, and that's exactly what we have here. It may be that the judge would exercise his discretion to impose full restitution. We now have the new facts of the Esmail case, where the judge has apparently exercised discretion to apportion only $70,000 in restitution. The court has given, the district court has given this court no explanation for why we have six times that amount of restitution in Mr. deGlauwe's case. So I think the basic point is there's a bit of a black box here. It's difficult to know what the court was thinking if the court was actively engaged in this question in the first place, and for that reason, the most appropriate thing is a remand. Well, Esmail didn't, he didn't plead to the conspiracy, did he? He pled to conspiracy to commit money laundering, so it was a different count, but it was a conspiracy count, and I don't think there'd be any dispute that he was liable for the full $400-something-thousand in restitution, and that the only way to understand the $70,000-plus in restitution was as an apportioning. Not only was he quite clearly under the conspiracy case law liable for the full $400-something-thousand amount, and that's borne out by the facts. I mean, Esmail did not just launder the money. He was the one who personally purchased the three homes at issue, then sold them to what he knew to be a straw buyer, then received the proceeds, and then laundered them, so there was active engagement in the overall fraud. But his plea agreement, he agreed to pay full restitution, not limited to the amount of money that was laundered. And unless the Court has a different question. But, but, was, are you, what did the district court had the sentence report and had the positions of the parties with respect to it? Are you saying that nobody told him that he could have ordered less restitution than he did? No, in fact, at the defendant's sentencing position, which was filed under seal with this Court, pages 17 to 19, the apportioning argument is specifically made. Now, then what happened is the government responded, and this is at page 9 of their sentencing memorandum, that, to tell the Court, no, apportioning is inappropriate at this point in time. Now, that's, that's not a correct construction of the case law. It very clearly underbooths this Court's precedent. Apportioning was an option. The probation, the PSR, didn't mention it one way or the other. So, I mean, I think all parties could have done perhaps a better job bringing this to the Court's attention, but it certainly was raised by Mr. DeGlawe. And, and the Court simply said nothing, and now we have the Esmail case, where, which seems intention in terms of what the Court's done. And so, really, a remand is necessary for, for the district court to actually exercise some discretion here. Well, okay. I guess I'm not quite sure how we know that it didn't. Well, I, I guess, Your Honor, first I would say we need to have some evidence that it did, and I think that's under the Mills case, and also the Carty line of cases. But I think we also can surmise that the Court did not exercise discretion because when the Court did exercise discretion, apparently, in, in Mr. Esmail's case, it chose to apportion, and that's, that's almost a factor of six less than to Mr. DeGlawe. And there's no explanation for why that would be. Mr. DeGlawe has an IQ of 63. Mr. Esmail has none of those, those cognitive impairments. He, you know, did not actually receive the funds, whereas Esmail did. There's, there's really not an explanation for why, if you're looking at relative culpability and relative economic circumstances, one might impose, exercise discretion to impose almost six times more restitution on, on Mr. DeGlawe. And then I would also say, Your Honor, that even if this Court believes that the district court exercised its discretion, and, and we think it, it does not appear from the record that it did, then that was an abuse of discretion, especially in light of the district court's failure to apportion at the time of sentencing any restitution to Esmail, or now to only apportion $70,000, that that factor of six difference is an abuse of discretion, and that that is a further reason for remand. And I'd like to reserve the balance of my time. You may.  Thank you. Good morning, Your Honors. May it please the Court, Stephen Gorbach on behalf of the United States. There is no dispute over the issues, or the main issues in this case, whether the district court understood its authority to apportion restitution and whether the district court abused its discretion in deciding not to. The record is clear that the district court understood its authority because in the defendant's sentencing brief, they actually quoted Title 18, United States Code, Section 3664H, which lays out the discretion. The district court stated, page 10 of the excerpt of the record, that it had read the briefs. The government did not argue that the district court did not have authority. What the government argued is that it would be premature in that case because the co-defendant, Jabron DeGlawe, was a fugitive. And since the intent of the Mandatory Victim Restitution Act is to ensure full restitution, it would be inapposite to try to assess restitution with a fugitive who's not there. Moreover, as the appellant points out on page 11 of their brief, apportionment requires, if you accept the argument, an assessment of the relative culpability in the economic circumstances. And since this case involved a fugitive, the government did not feel it was appropriate on the facts. But that was not a statement about the district court's authority to do so. It's clear. Oh, sorry. If the court shouldn't apportion when there's a fugitive in the conspiracy, why did the court do that with Esmail? Your Honor, the reason, and this leads to, I think, the second point, which I think is the reason that Esmail has a lower restitution amount. The record is clear that the district court made a finding that Esmail was less culpable. And that is part of the excerpts of record on page 16. The reason Esmail was less culpable and the reason it was not an abuse of discretion is because Esmail merely laundered the funds. He sold the houses to Atta Deglawi and Gibran Deglawi and then gave the proceeds to Gibran Deglawi. The district court made a finding that this defendant, Atta Deglawi, is different because he was knowingly involved in applying for fraudulent loans in his deceased father's name. He possessed a credit card and used that credit card to build up the deceased father's credit. And he possessed a California driver's license with the appellant's photograph and his deceased father's name, which he then used to apply for the loans and to make misstatements directly to the lenders. And I think this addresses the point that was made earlier that, yes, the record does reflect, consistent with the Mills case, that the district court considered the issue, that the district court made the findings, and, therefore, it was not an abuse of discretion. What does the record show with respect to his IQ? That is unclear, Your Honor. It was argued at the district court and the district judge did not make any findings. The government's position at the district court, as stated in the sentencing positions, was simply that this defendant had a criminal history of three based on a prior conviction for which he served 57 months. In that case, he also conspired with his brother. And, therefore, the issue of his IQ is a bit less than the issue of his criminal activity with his brother. But I have no ‑‑ there was no finding. The brother was the real reason. The government does not dispute that the brother is more culpable. But that does not make this appellant a minor player, which is why the district judge did not impose the minor role reduction. I think it's very fair to say that in terms of relative culpability, that it's Gibran Deglawi is number one, Atif Deglawi is number two, and Mohammed Esmail is number three. But that does not justify a similar sentence or restitution amount with respect to Esmail. Unless the court has any questions, I will submit. I have none. Just to respond briefly to a few points, and also in response to Your Honor's earlier question, there is also the recent case from this circuit, United States versus, I'm not sure if I'm pronouncing this correctly, SOCI, T-S-O-S-I-E, which is 639 F3, 1213, 2011, which says when there's a dispute about restitution, the court must explain its reasoning on the record. And so that's an additional support for what Mills had already said in this circuit. Mr. Deglawi's IQ, according to the report that was submitted in district court and has been filed in Brazil with this court, is about 63. He reads at a second grade reading level. We're not saying he has no culpability. Mr. Deglawi accepted responsibility. He pled guilty. He accepted responsibility early enough to get acceptance of responsibility points. He has not challenged his conviction or his 33-month sentence. He's not saying there's no culpability here. But the question under apportioning to the extent the district court was even exercising its discretion about whether to apportion at all is relative culpability between the co-defendants. And I don't think that anybody would argue that Mr. Deglawi is six times more culpable than Esmael. We would argue that based on his mental impairments, he's less culpable. But even if it's somewhat comparable, I mean, again, Esmael, he was actively involved in the purchase of these homes, in the sale of these homes. But if you don't misuse the deceased father's license and his credit and all those things, Esmael's not going to have anything to work with. This defendant that you're talking about had an active role in making the thing happen, and isn't restitution supposed to cover the entire loss? He is liable for the entire loss, over $400,000, as is Esmael. I mean, just in terms of relative culpability, in terms of the laundering, I mean, Congress seems to think that money laundering is a greater offense. That has a 20-year statutory maximum sentence, whereas Mr. Deglawi's crime has a five-year. Just to the extent we're talking about relative culpability in terms of what they're doing. What's our standard of review? The standard of review is abuse of discretion. However — Not plain error? On this question, no. I believe that the standard is abuse of discretion. It was clearly raised in the sentencing memorandum at pages 17 to 19, and the government has made no waiver argument there. But the question of whether a remand is appropriate is more of a question under the Mills case. What's the situation with respect to the brother? The brother is a fugitive. He's still a fugitive? He's still a fugitive in Nicaragua. Unclear if he will ever be returned. My understanding is he may be in prison in Nicaragua. Unclear if he will be extradited. This is an additional fact the district court did not have at the time. The district court understood that he was a fugitive, but in imposing joint and severable liability for the full amount, the district court apparently did not understand that that was a legal fiction. So, again, yet another reason that this case cries out for — Well, if you're going to get some meaningful restitution here, and the brother is a fugitive, and it's not meaningful that he would pay any of this, I'm not sure which way that cuts in terms of lowering the restitution. It's not clear which way that cuts. Certainly it should seem to apply to Esmael as well, who was apportioned only $70-something thousand with no discussion of the brother. But, again, it's not clear. There's a lot of questions here and not a lot of factual answers because the district court didn't engage in this question, and it's appropriate for the court to do so in the first instance. Thank you. Are there any further questions? David. I had a question. Yes, Your Honor. Whether the record showed what happened to the money. Yes, Your Honor. There's no — My client, Mr. Deglawi, ever received a penny from this, and, in fact, he affirmatively put forth in the district court that he did not. What the PSR says, and this is at paragraph 24, is that only Gibran and Esmael touched the funds, and then the district court adopted that PSR. So we would argue that the district court adopted the factual finding that Mr. Deglawi did not touch any funds, but at the very least the court did not find that he had, and the government concedes that they cannot demonstrate any tie between him and the funds. Okay. Thank you, Your Honors. Thank you. The matter just argued is submitted for decision.
judges: McCuskey, Schroeder, Gould